NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF SUSIE STEVENS,<br><br>    Plaintiff,<br><br>          v.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>    Defendant.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>    Third-Party Plaintiff,<br><br>          v.<br><br>DINO MARKS, et al.,<br><br>    Third-Party Defendants. | Civil Action No. 22-6725 (RK) (JBD)<br><br>__OPINION__ |

**KIRSCH, District Judge**

     **THIS MATTER** comes before the Court upon two unopposed Motions for Default Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 55(b) filed by Defendant and Third-Party Plaintiff, North American Company for Life and Health Insurance ("North American").

     Originally before this Court was a breach of contract action brought by The Estate of Susie Stevens ("The Estate") on November 11, 2022 against North American pursuant to 28 U.S.C. § 1332. (*See* ECF No. 1.) By stipulation dated January 11, 2024 (the "Stipulation and Judgment"),

the insurance policy underlying that breach of contract action—the "Stevens Policy"—was rescinded and Third-Party Defendants Sabrina Mitlo, Joseph Mitlo, as well as Plaintiff The Estate, were dismissed with prejudice from this lawsuit. (*See* ECF No. 54 ¶ 2.) Additionally, the claims against North American raised in the original Complaint were dismissed with prejudice. (*See id.* ¶ 3).

Now before the Court are claims arising from North American's Four-Count Amended Third-Party Complaint ("ATPC") seeking declaratory and equitable relief (Count IV) and leveling causes of action under the New Jersey Insurance Fraud Prevention Act ("IFPA") (N.J.S.A. 17:33A-1, *et seq.*) (Count I); fraudulent inducement (Count II); and civil conspiracy (Count III) invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* ATPC.) These claims are asserted against remaining Third-Party Defendants Dino Marks; Irina Lucki; John Lee; Richard Mitlo; Valentina Mitlo; John Adams; Cathy Nicholas; and Ricky Costa (collectively, "Third-Party Defendants").

The Third-Party Defendants have not responded to the pleadings in this case. North American properly moved for an entry of default against the Third-Party Defendants pursuant to Rule 55(a). (*See* ECF Nos. 52 and 59.) Afterwards, North American filed the two Motions for Default Judgment against the Third-Party Defendants that are presently before the Court. (ECF No. 55 ("First Mot. Default Jud."); ECF No. 60 ("Second Mot. Default Jud.").) North American asserts that "no further filings are anticipated." (ECF No. 61.) Further, in its Motions for Default Judgment, North American does not seek monetary damages. (First Mot. Def. Jud. Br. at 19; Second Mot. Def. Jud. Br. at 20.) Rather, it seeks a declaration that the various insurance policies are rescinded and *void ab initio*. (*Id.*)

The Court has considered North American's Motions and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, North American's motions are **DENIED in part** and **GRANTED in part**.

## I.    BACKGROUND

### a.    OVERVIEW

The factual history of the underlying fraud in this case is convoluted. Defendant and Third-Party Plaintiff North American filed the ATPC in November 2023, impleading a number of individuals. A number of these individuals appear to be fictitious identities that have a connection to two, already-dismissed, individuals (who were previously impleaded by way of the ATPC): Sabrina and Joseph Mitlo. (*See* ECF No. 54 ¶ 2.)

The Court is quite cognizant of North American's apparent predicament—that North American appears to have numerous insurance policies which it *knows* are fraudulent. However, with the sole exception of Third-Party Defendant John Lee—and as described in great detail below—because the Court is without personal jurisdiction as to the remaining Third-Party Defendants, the Court cannot provide North American with the relief that North American seeks.[1]

### b.    THE INSURANCE SCHEME

On April 24, 2019, someone purporting to be Susie Stevens ("Ms. Stevens") submitted an application for a ten-year term life insurance policy with North American[2] with a death benefit of $1,000,000. (ECF No. 43 ("ATPC") ¶ 21; *see* Ex. A to ATPC.) In reliance on the truth and accuracy of the information in the application, North American issued a life insurance policy with a policy

---

[1] There is no asserted cause of action against Dino Marks. Thus, he must be dismissed.

[2] North American is an insurance company organized under the laws of Iowa with its principal place of business at 8300 Mills Civic Parkway, West Des Moines, Iowa. (ATPC ¶ 1.) It is licensed to sell insurance products in New Jersey. (*Id.*)

number LB41000741 ( the "Stevens Policy"). (ATPC ¶¶ 21, 26; *see* Ex. A to ATPC.) Ms. Stevens passed away on August 29, 2021. (ATPC ¶ 27; *see also* Ex. C-1 to ATPC; Ex. C-2 to ATPC; Ex. C-3 to ATPC.)

Third-Party Defendant Dino Marks, the beneficiary on the Stevens Policy and an individual claiming to be Ms. Stevens's husband, subsequently reported Ms. Stevens's death to North American on November 22, 2021. (ATPC ¶¶ 22(h), 28; Ex. B to ATPC.) After finding discrepancies in the claim, North American conducted a thorough investigation that revealed that the application, the claim, and other statements surrounding the Stevens Policy were false. (ATPC ¶¶ 32–55.) Over the course of several months that followed, North American, through Counsel, requested additional information and documentation from Dino Marks and his alleged attorney, Robert DeGroot, Esq. ("Attorney DeGroot").[3]

According to the ATPC and documents submitted to the New Jersey Department of Banking and Insurance, Dino Marks is a resident of New Jersey. (ATPC ¶ 5; Ex. D to ATPC.) Dino Marks is also associated with multiple addresses in Virginia and New Jersey and has adopted numerous aliases. (ATPC ¶ 5.) Upon information and belief, Dino Marks resided at 310 Lynnwood Street, Piscataway, New Jersey with Sabrina and Joseph Mitlo at the time of the filing and service of the first Third-Party Complaint in this action in February 2023. (*Id.*)

Sabrina Mitlo is a resident of New Jersey who claimed to be the biological daughter of Ms. Stevens. (*Id.* ¶¶ 3, 68.) Sabrina Mitlo resides at 310 Lynnwood Street, Piscataway, New Jersey. (*Id.* ¶ 3.) Sabrina Mitlo, according to her testimony and a marriage certificate she has produced in

---

[3] The Court notes for the record that Attorney DeGroot never entered an appearance on behalf of Dino Marks. However, he appears to have held himself out as Dino Marks's Counsel by: producing documents related to Dino Marks, (Ex. E to ATPC); making statements about Dino Marks's cultural or religious practices (Dino Marks is purportedly a member of the Romani community), (Ex. I to ATPC); and failing to correct North American in correspondence where Dino Marks is referred to as "[Attorney DeGroot's] client." (Ex. H to ATPC; Ex. I to ATPC.)

this action, is married to Third-Party Defendant, Joseph Mitlo; they reside together. (*Id.* ¶¶ 3–4.) Both Sabrina and Joseph Mitlo have adopted multiple aliases over the years. (*Id.*) Among other aliases, Joseph Mitlo has adopted the alias and persona of his co-conspirator, Dino Marks.[4] (*Id.* ¶ 4.)

While the death benefit on the Stevens Policy was originally made out to the beneficiary Dino Marks—the 100 percent beneficiary of the policy, (*id.* ¶¶ 22(h), 28)—Dino Marks later assigned his purported rights under the Stevens Policy to Sabrina Mitlo. (*Id.* ¶¶ 82–83.) When this assignment was made, however, is not clear from the record.[5] (*See id.* ¶¶ 83–84.)

The Estate, through Attorney DeGroot, brought the original Complaint on November 22, 2022. (*See* ECF No. 1). North American answered the Complaint and later filed a Third-Party Complaint against Sabrina Mitlo and her alleged co-conspirator, Dino Marks. (*See* ECF Nos. 4 and 8.) On April 11, 2023, Attorney DeGroot—legal counsel for The Estate—filed an unopposed motion to withdraw because he was expected to be called as a witness. (*See* ECF Nos. 13; 13-1; and 14.) This motion was granted on June 30, 2023. (*See* ECF No. 28.) North American filed its request for an entry of default against Sabrina Mitlo and Dino Marks pursuant to Rule 55(a) and later moved for default judgment against same. (*See* ECF Nos. 16 and 18.)

---

[4] North American averred to significant facts underlying Sabrina and Joseph Mitlo's fraudulent operation. For example, North American noted that the address Dino Marks listed on the Stevens Policy's application was actually a commercial suite rented to Sabrina and Joseph Mitlo as an office for one of their companies, "Dependable General Construction, LLC." (ATPC ¶¶ 43–44.) North American further recounts how, prior to Sabrina and Joseph Mitlo vacating the commercial suite rented to them, the landlord entered the property. (*Id.* ¶ 47.) Noting many irregularities, the landlord photographed what he found on the premises. This included "a single computer, a phone with dozens of missed calls, various notepads, a [S]ocial [S]ecurity card for Cher Wasso, and a chart describing how to decode the numbers used in [S]ocial [S]ecurity numbers." (*Id.*) North American provides the landlord's photographs in its ATPC. (*Id.*). There are other examples of a highly suspicious nature. (*E.g.*, Schedules 1-8 to ATPC; ATPC ¶¶ 95-96.)

[5] The Court notes that a purported document of assignment produced by Sabrina Mitlo is dated November 19, 2021—around a year before the Complaint was originally filed by The Estate. (ATPC ¶ 84; *see also* ECF No. 1.)

Through newly-retained Counsel, Sabrina Mitlo requested that the default be set aside and that she be granted leave to file a response to the Third-Party Complaint *nunc pro tunc*, (ECF Nos. 19 and 22), which was granted by the Honorable J. Brendan Day, U.S.M.J. "without prejudice to North American's right to continue to seek default judgment against Third-Party Defendant Dino Marks" on June 30, 2023. (ECF No. 28 at 2.) As permitted by Judge Day, Sabrina Mitlo timely answered the Third-Party Complaint on July 3, 2023. (*See* ECF No. 30.) In it, she asserted a cross-claim against Dino Marks and a counter-claim against North American, (*id.* at 25–33), which North American answered on July 24, 2024, (*see* ECF No. 37).

North American filed the ATPC—the operative Third-Party Complaint in this litigation—without objection on November 9, 2023; this pleading detailed further allegations regarding the scale of the purported insurance fraud that North American had uncovered during discovery in this case. (*See* ATPC.) In the ATPC, North American impleaded Third-Party Defendants Sabrina Mitlo; Joseph Mitlo; Dino Marks; Irina Lucki; Valentina Mitlo; John Adams; John Lee; Richard Mitlo; Cathy Nicholas; and Ricky Costa.[6] (*Id.* at 9.) A request for service by publication on Third-Party Defendants Valentina Mitlo, John Adams, Cathy Nicholas, and Ricky Costa was later granted by Judge Day, (*see* ECF No. 57), and service was effectuated by publication on these individuals, (*see* ECF No. 58).

*Third-Party Defendant Irina Lucki:* On April 19, 2019, North American issued a $1,000,000 life insurance policy insuring the life of Irina Lucki (the "Irina Lucki Policy"). (ATPC ¶ 102; *see also* Ex. Q to ATPC.) According to North American, Irina Lucki is a resident of New York, whose last known address was 149 Brighton 11th Street, Apt 3H, Brooklyn, New York. (*Id.* ¶ 8(a).) Notably, Third-Party Defendant Irina Lucki appears to be connected to Sabrina Mitlo;

---

[6] Again, Sabrina and Joseph Mitlo were dismissed from this action with prejudice pursuant to the Stipulation and Judgment entered on January 11, 2024. (ECF No. 54 ¶ 2.)

according to Sabrina Mitlo, Irina Lucki is the ex-girlfriend of Sabrina Mitlo's father-in-law, Peter Mitlo. (*Id.* ¶ 102.) The connection between Sabrina and Joseph Mitlo and Irina Lucki is further supported by the fact that the IP Address associated with Irina Lucki's application for insurance "encompasses" Sabrina and Joseph Mitlo's 310 Lynnwood Street address. (*Id.* ¶ 108.) Neither Irina Lucki nor any attorney for Irina Lucki has appeared in this action. (ECF No. 55-2 ("Fourth Konkel Decl.") ¶¶ 10–11.) Importantly, Dino Marks is not named as a beneficiary of the Irina Lucki Policy.

*Third-Party Defendant Valentina Mitlo:* On March 9, 2022, North American issued a $1,000,000 life insurance policy insuring the life of Valentina Mitlo (the "Valentina Mitlo Policy"). (*Id.* ¶ 110; *see also* Ex. R to ATPC.) According to an insurance application submitted in her name, Valentina Mitlo resides at 703 Elmhurst Court, Sugarland, Texas. (ECF No. 51-2 ("Third Konkel Decl.") ¶ 6.) After further investigation, North American found another address for Valentina Mitlo: 182 Tingley Lane, Edison, New Jersey. (Third Konkel Decl. ¶ 7; ATPC ¶ 8(b).) At both addresses, the current residents of the home indicated that that they did not know "Valentina Mitlo" or that they did not believe that a "Valentina Mitlo" had ever lived at those residences. (Third Konkel Decl. ¶¶ 9–11.) Notably, Third-Party Defendant Valentina Mitlo appears to be connected to Sabrina Mitlo, as according to Sabrina Mitlo, Valentina Mitlo is "'maybe'" one of Joseph Mitlo's "'distant relatives,'" who had "'co-habituated'" with Sabrina and Joseph Mitlo at one point in time. (ATPC ¶ 113.) Neither Valentina Mitlo nor any attorney for Valentina Mitlo has appeared in this action. (ECF No. 60-2 ("Fifth Konkel Decl.") ¶¶ 4–5.) Valentina Mitlo was constructively served by publication in accordance with Judge Day's Order. (*See* ECF Nos. 57 and 58.) Importantly, Dino Marks is not named as a beneficiary of the Valentina Mitlo Policy.

*Third-Party Defendant John Adams:* On April 24, 2019, North American issued a $1,000,000 life insurance policy insuring the life of John Adams (the "John Adams Policy"). (ATPC ¶ 117; *see also* Ex. S to ATPC.) According to the life insurance application, John Adams resides at 1319 Bound Brook Road, Suite 2A, Middlesex, New Jersey, although his insurance application provided a copy of a Washington State driver's license. (*Id.* ¶ 119.) Subsequent background checks indicated that "John Adams" lived at 1151 W. 17th Street, Santa Ana, California. (Third Konkel Decl. ¶ 14; ATPC ¶ 8(c).) Both addresses are incorrect, since the New Jersey address is that of a dance studio and the California address is for a massage parlor. (Third Konkel Decl. ¶¶ 16–17.) North American pleads that, during the pendency of this litigation, it discovered that John Adams' Social Security number is associated with multiple other individuals. (ATPC ¶ 123.) Notably, Third-Party Defendant John Adams appears to be connected to Sabrina Mitlo since the IP Address associated with John Adams's application for insurance "encompasses" Sabrina and Joseph Mitlo's 310 Lynnwood Street address. (*Id.* ¶ 121). Further, the application for the John Adams Policy was submitted on the same date that Ms. Stevens's application was submitted. (*Id.* ¶ 117.) Neither John Adams nor any attorney for John Adams has appeared in this action. (Fifth Konkel Decl. ¶¶ 4–5.) John Adams was constructively served by publication in accordance with Judge Day's Order. (*See* ECF Nos. 57 and 58.) Importantly, Dino Marks is not named as a beneficiary of the John Adams Policy.

*Third-Party Defendant John Lee*: On March 9, 2019, North American issued a $1,000,000 life insurance policy insuring the life of John Lee (the "John Lee Policy"). (ATPC ¶ 125; *see also* Ex. T to ATPC.) According to the insurance application submitted in his name—and according to Sabrina Mitlo—John Lee resided with Sabrina and Joseph Mitlo at 310 Lynnwood Street when he submitted the application, although he provided a copy of a Nevada driver's license with his

insurance application. (ATPC ¶ 125.) The beneficiary on this policy—Shirley John—is purportedly one of Sabrina Mitlo's mother's "longtime friends."[7] (ATPC ¶ 126). John Lee's last known address is 964 E. Greenbrae Drive, Sparks, Nevada. (*Id.* ¶ 8(d).) Notably, John Lee was served at Sabrina and Joseph Mitlo's New Jersey address: 310 Lynnwood Street. (*See* ECF No. 52-2.) According to the Affidavit of Service for John Lee, service of process was effectuated upon a co-resident at that address. (*See id.*) The comments on the Affidavit of Service state the following:

> Noelle Mitlo wouldn't provide any other information other than he lives here closed door on me I did tell her that I could not leave them with her unless they lived there and I did ask her if she lived there, she asked me to hold on closed the door then came back and said she could take them. I am informed that Noelle is the 16 year old step daughter of Sabrina Mitlo and that Noelle lives with Sabrina and Joseph Mitlo at the subject address . . . .

(ECF No. 52-2 at 2.) John Lee's Social Security number is associated with multiple other individuals. (ATPC ¶ 127.) According to North American:

> publicly available records state that the social security number used by John Lee for this application is used by two other individuals, that John Lee is associated with four other social security numbers (xxx-xx-5641, xxx-xx-5641, xxx-xx-5641, xxx-xx-2016), and that these four other social security numbers are associated with other individuals.

(*Id.*) Neither John Lee nor any attorney for John Lee has appeared in this action. (Fourth Konkel Decl. ¶¶ 9–10.) Importantly, Dino Marks is not named as a beneficiary of the John Lee Policy.

*Third-Party Defendant Cathy Nicholas*: On September 25, 2020, North American issued a $1,000,000 life insurance policy insuring the life of Cathy Nicholas (the "Cathy Nicholas Policy"). (ATPC ¶ 134; *see also* Ex. V to ATPC.) According to the insurance application submitted in her

---

[7] North American also presents information that "Shirley John" was associated with several other insurance applications associated with Sabrina and Joseph Mitlo's other addresses—including one submission listing Sabrina and Joseph Mitlo's 310 Lynnwood Street address. (*E.g.*, Schedule 3 to ATPC.)

name, Cathy Nicholas lived at 134 Wood Avenue, Middlesex, New Jersey, although her insurance application provided a copy of a Nevada driver's license. (*Id.* ¶ 135.) This is the address for a motor car company and machine shop. (Third Konkel Decl. ¶ 23.) After running a background check, North American found another address associated with Cathy Nicholas: 940 E. Mission Avenue, Apt 9, Escondido, California. (*Id.* ¶ 20; *see also* ATPC ¶ 8(f).) The individual residing within this California apartment—who claimed to have rented that apartment for multiple years—had never heard of "Cathy Nicholas." (Third Konkel Decl. ¶ 22.) Notably, Third-Party Defendant Cathy Nicholas appears to be connected to Sabrina Mitlo, since according to Sabrina Mitlo, Cathy Nicholas is "the mother of [Sabrina Mitlo's] husband's first cousin, Emmanuel Mitlo." (ATPC ¶ 137.) Neither Cathy Nicholas nor any attorney for Cathy Nicholas has appeared in this action. (Fifth Konkel Decl. ¶¶ 4–5.) Cathy Nicholas was constructively served by publication in accordance with Judge Day's Order. (*See* ECF Nos. 57 and 58.) Importantly, Dino Marks is not named as a beneficiary of the Cathy Nicholas Policy.

*Third-Party Defendant Ricky Costa:* On April 15, 2019, North American issued a $950,000 life insurance policy insuring the life of Ricky Costa (the "Ricky Costa Policy"). (ATPC ¶ 142; *see also* Ex. W to ATPC.) According to the insurance application submitted in his name, Ricky Costa lived at 6019 Highplace Circle in Dallas, Texas. (ATPC ¶ 143; Third Konkel Decl. ¶ 25.) When service was attempted at the Dallas address, an individual opened the door, and she informed the process server that Ricky Costa was her nephew and that he did not live there. (Third Konkel Decl. ¶ 28.) The individual also stated that "she had told Ricky [Costa] she wanted nothing to do with him and had refused to allow him or his friends to use her address." (*Id.*) North American ran a background check on Ricky Costa during the course of this litigation which returned an address of 723 15th Street, Gretna, Louisiana. (*Id.* ¶¶ 26–27; ATPC ¶ 8(g).) When process servers

attempted to serve Ricky Costa at the address located in Louisiana, they found a vacant home listed for rent. (Third Konkel Decl. ¶ 29.) Neither Ricky Costa nor any attorney for Ricky Costa has appeared in this action.[8] (Fifth Konkel Decl. ¶¶ 4–5.) Ricky Costa was constructively served by publication in accordance with Judge Day's Order. (*See* ECF Nos. 57 and 58.) Importantly, Dino Marks is not named as a beneficiary of the Ricky Costa Policy.

*Third-Party Defendant Richard Mitlo:* On July 26, 2020, North American issued a $1,000,000 life insurance policy insuring the life of Richard Mitlo (the "Richard Mitlo Policy"). (ATPC ¶ 129; *see also* Ex. U to ATPC.) Richard Mitlo, according to his insurance application, resided at 200 South Ave., Suite 7 in Middlesex, New Jersey. (*Id.* ¶ 130.) Notably—and aside from his last name—Third-Party Defendant Richard Mitlo appears to be connected to Sabrina Mitlo as this is an address associated with one of Sabrina and Joseph Mitlo's business entities. (*Id.*) Upon information and belief, Richard Mitlo was—and still is—a resident and citizen of the State of Texas, whose last known address is 8027 Candle Lane, Houston, Texas. (*Id.* ¶ 8(e); *see* ECF No. 52-3.) According to the Affidavit of Service, Richard Mitlo was successfully served at the Dallas address. (ECF No. 52-3.) Neither Richard Mitlo nor any attorney for Richard Mitlo has appeared in this action. (Fourth Konkel Decl. ¶¶ 10–11.) Importantly, Dino Marks is not named as a beneficiary of the Richard Mitlo Policy.

During this time, Plaintiff The Estate and Third-Party Defendants Sabrina and Joseph Mitlo (collectively, "Stipulating Third-Party Defendants") entered into a stipulation with North American (the "Stipulation and Judgment"), which the undersigned granted on January 11, 2024. (*See* ECF No. 54.) The Stipulation and Judgment declared the Stevens Policy to be "void from the

---

[8] Although it is unclear if Ricky Costa is related to Sabrina and Joseph Mitlo, the Dallas, Texas address used by Ricky Costa in his application was inhabited by another individual named "Susie Stevens." (ATPC ¶ 143.)

outset" and "RESCINDED." (*Id*. ¶ 1.) The Stipulation and Judgment further stated that North American's claims against each of the Stipulating Third-Party Defendants were dismissed with prejudice and without costs. (*Id*. ¶ 2.) To be clear, the Stipulation and Judgment only dismissed claims against the Stipulating Third-Party Defendants, and the Judgment was without prejudice both to North American's claims against the remaining Third-Party Defendants and any claims against future parties. (*Id*. ¶ 2.) The Stipulation and Judgment also dismissed the claims asserted against North American by the Stipulating Third-Party Defendants. (*Id*. ¶ 3.)

As to both Motions for Default Judgment, North American properly requested an entry of default prior to filing their motions for default judgment. (*See* ECF Nos. 52 and 59.) Thus, before the Court are two Motions for Default Judgment involving only Third-Party Defendants Dino Marks; Irina Lucki; Valentina Mitlo; John Adams; John Lee; Cathy Nicholas; Richard Mitlo; and Ricky Costa.

## II.    LEGAL STANDARD

Rule 55 permits a party to apply for and a court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). The Third Circuit has a "well-established policy of 'disfavoring default judgments and encouraging decisions on the merits.'" *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) (quoting *Harad v. Aetna Cas. & Sur. Co*., 839 F.2d 979, 981 (3d Cir.1988)). Based on the circumstances presented, a court has discretion to enter a default judgment pursuant to Rule 55. *See Salins v. EMR Tech. Sols., Inc.*, No. 21-20125, 2023 WL 7386844, at *3 (D.N.J. Nov. 8, 2023).

Before entering default judgment, "a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages." *Days Inns Worldwide, Inc. v. T.J. LLC*, No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (internal citations omitted).

In addition, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (internal citations omitted).

In terms of personal jurisdiction, prior to entering a default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Bank of Am., N.A. v. Hewitt*, No. 07-4536, 2008 WL 4852912, at *5 (D.N.J. Nov. 7, 2008) (internal citations omitted). "When a court is asked to enter default judgment against defendants over whom it cannot exercise personal jurisdiction, the court has discretion to dismiss the action *sua sponte*." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006) (internal citations omitted). This serves to help avoid the entry of a judgment that will later be found to be void. *See id.* (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FED. PRACTICE & PROCEDURE § 2682 (3d ed. 2005)).

III.    **DISCUSSION**

### A. THIRD-PARTY DEFENDANT DINO MARKS

As a preliminary matter, the Motion for Default Judgment against Dino Marks shall be denied because it is moot as there is no controversy surrounding Dino Marks before the Court. *See Shaw v. McGuinn,* No. 14-1965, 2015 WL 5178128, at *3 (M.D. Pa. Sept. 4, 2015) (noting in the insurance policy context that where there is "no dispute between the insurer and the insured as to liability for the claimed injuries of a third party, courts have held that there is no justiciable controversy." (internal citations omitted)); *see also Baal Corp., Inc. v. Conn. Indem. Co*., No. 00-571, 2001 WL 911358, at *1 (E.D. Pa. Aug. 13, 2001) (in the declaratory judgment context, finding that plaintiff was not a third-party beneficiary under the insurance policy and thus, lacked standing "to be a part of [the] action . . . .").

Here, the Stevens Policy to which Dino Marks was originally a beneficiary—but later assigned his interest away to Sabrina Mitlo, (ATPC ¶¶ 82–83)—was rescinded on January 11, 2024 by the Stipulation and Judgment. (*See* ECF No. 54.) The clear language of the Stipulation and Judgment explicitly states that "North American has no obligation to any of the Stipulating Third-Party Defendants or *to any other person under* [the Stevens Policy]." (ECF No. 54 ¶ 1 (emphasis added).) Therefore, there is no basis for relief with which the Court could provide North American since the Stevens Policy is rescinded, and no facts have been presented surrounding Dino Marks's involvement in the perpetration of the other purported insurance frauds involving Third-Party Defendants Irina Lucki; Valentina Mitlo; John Adams; John Lee; Cathy Nicholas; Richard Mitlo; and Ricky Costa.[9] Nor has North American stated that Dino Marks is a beneficiary under any of those same policies. Accordingly, the Motion for Default Judgment as it relates to Dino Marks is denied as there is no controversy before the Court.

**B. THIRD-PARTY DEFENDANTS IRINA LUCKI; VALENTINA MITLO; JOHN ADAMS; JOHN LEE; CATHY NICHOLAS; RICHARD MITLO; AND RICKY COSTA**

**1. NON-RESIDENT THIRD-PARTY DEFENDANTS**

The Court now analyzes whether it has jurisdiction over the Third-Party Defendants who are not residents of New Jersey: Irina Lucki; Valentina Mitlo; John Adams; Cathy Nicholas; Richard Mitlo; and Ricky Costa (collectively, "Non-Resident Third-Party Defendants"). As previously noted, prior to entering a default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Bank of Am., N.A.*, 2008 WL 4852912, at *5. Here, none of the

---

[9] The Court notes it has serious reservations that Dino Marks actually exists. Indeed, based upon a review of the parties' submissions to date, it appears that Dino Marks is another alias of Joseph Mitlo. (*See, e.g.*, Schedules 1–8 to ATPC; ATPC ¶¶ 95–96 (detailing how Dino Marks utilized Joseph Mitlo's phone number and emails on insurance policy application materials).)

Non-Resident Third-Party Defendants have appeared in this case on behalf of themselves or through counsel, and none have filed responsive pleadings. Accordingly, the Court exercises its affirmative duty to investigate its personal jurisdiction over the Non-Resident Third-Party Defendants.

According to the Court's review of the facts and North American's pleadings, Irina Lucki is a citizen of New York; John Adams and Cathy Nicholas are citizens of California; Richard Mitlo is a citizen of Texas; and Ricky Costa is a citizen of Louisiana. (ATPC ¶ 10.) Valentina Mitlo is also a non-resident of New Jersey.[10] New Jersey's long-arm statute permits the exercise of personal jurisdiction to "the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). While physical presence within a jurisdiction "is not required to establish jurisdiction over a nonresident defendant[,]" a plaintiff must show that a defendant purposefully directed its activities toward the residents of the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985)).

A court may exercise two types of personal jurisdiction over a party: general ("all-purpose") jurisdiction or specific ("case-linked") jurisdiction. *Ford Motor Co. v. Montana Eighth*

---

[10] As to what state she does reside in, the Court cannot say. Although North American pleads that Valentina Mitlo is a citizen New Jersey, (ATPC ¶ 10), the Court believes that she is more properly considered a non-resident of New Jersey based on the facts before it. *First*, individuals at the New Jersey address where North American attempted to serve process for Valentina Mitlo informed the process server that Valentina Mitlo did not live there, and indeed, never had. (Third Konkel Dec. ¶ 9.) Even when considering whether a different address in New Jersey could serve as her residence since North American pleads that it received "another" application for insurance for Valentina Mitlo that listed Sabrina and Joseph Mitlo's address on the application, service of process in this litigation was never attempted at this address. (*See id.* ¶¶ 6–12.) *Second*, Sabrina Mitlo denied knowing Valentina Mitlo's current address, be it in New Jersey or otherwise. (ATPC ¶ 113; *see also* ECF No. 53 at 5.) *Third*, the address provided on the insurance application submitted in Valentina Mitlo's name lists a Texas address. (ATPC ¶ 111.) *Fourth*, the Court's analysis of Valentina Mitlo's residence as a non-resident is further supported by the fact that Valentina Mitlo was not able to be located after diligent efforts by North American and service by publication was therefore required. (*See* ECF No. 51-1.) Given that Valentina Mitlo has not filed any responsive pleadings in this case and the Court has an "affirmative duty to look into its jurisdiction both over the subject matter and the parties[,]" a jurisdictional analysis of Valentina Mitlo that treats her as a non-resident is appropriate. *Bank of Am., N.A.*, 2008 WL 4852912, at *5.

*Jud. Dist. Ct*., 592 U.S. 351, 358 (2021). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown,* 564 U.S. 915, 919 (2011)). Only a "limited set of affiliations" with a forum can give rise to general jurisdiction, such that, as stated, the defendant is essentially at home in the forum. *Id*. at 137.

Specific jurisdiction, on the other hand, arises from contacts with a forum. A plaintiff may allege specific jurisdiction by "establish[ing] with reasonable particularity" three elements. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). *First*, the defendant must have "'purposefully directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd*., 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp.,* 471 U.S. at 472). *Second*, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum. *Id*. (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). *Third*, the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here, the basis for this Court's jurisdiction arises out of these Non-Resident Third-Party Defendants' contacts with the forum, New Jersey; the Court therefore analyzes whether it has specific jurisdiction over these same Non-Resident Third-Party Defendants. On this point, North American relies on the fact that the Non-Resident Third-Party Defendants were properly served to argue that this Court has personal jurisdiction over same. (First Mot. Default Jud. Br. at 8; Second Mot. Default Jud. Br. at 13.) Even assuming that these Non-Resident Third-Party Defendants were properly served, "proper service of process alone is not sufficient to confer personal jurisdiction

upon a court. Personal jurisdiction over the particular party must also be shown to be consistent with the Due Process clause of the federal Constitution." *D'Onofrio,* 430 F. Supp. 2d at 439.

Here, there are insufficient facts to establish that the Non-Resident Third-Party Defendants have purposefully directed their activities at New Jersey and that the Court's exercise of jurisdiction over same would comport with traditional notions of fair play and justice. There are scant facts presented that the Non-Resident Third-Party Defendants had contact with New Jersey other than by virtue of allegedly conspiring with Sabrina and Joseph Mitlo to carry out a broad-reaching, significant insurance scheme. (ATPC ¶¶ 12–19). To this point, other than the fact that their names were used in connection with this scheme, there has been little presented to infer that these Non-Resident Third-Party Defendants contacted or otherwise conspired with Sabrina and Joseph Mitlo in New Jersey. (ATPC ¶¶ 101–147.) The argument that the Court has personal jurisdiction by virtue of the "tortious conduct committed by [their] co-conspirators in the State of New Jersey" who were acting as the Third-Party Defendant's "agents[,]" (*e.g.*, ATPC ¶¶ 12–19), is insufficient to confer the Court with personal jurisdiction as there is no information asserting that the Non-Resident Third-Party Defendants had contact with New Jersey. *Cf. Linwood Trading Ltd. v. E.S. Recycling Express Corp.*, No. 14-6332, 2017 WL 1882490, at *4 (D.N.J. May 9, 2017) (finding in the default judgment context that plaintiffs had established a *prima facie* case of specific jurisdiction over nonresident defendants where plaintiffs had pled that a defendant, among other contacts with New Jersey, had sent communications and documents to an office located in New Jersey and had purchased product from New Jersey on at least two occasions). Again, in this case, there is no evidence of communications or contact between these Non-Resident Third-Party Defendants and Sabrina and Joseph Mitlo or with New Jersey more broadly.[11]

---

[11] Relatedly, the Court questions the actual existence of several of these individuals. In addition to the use of aliases and the inability to locate many of these individuals, the fulcrum of fraud appears to be Sabrina

Accordingly, the Court's exercise of personal jurisdiction over the Non-Resident Third-Party Defendants has not been shown to comport with due process requirements. If the district court "lacks personal jurisdiction over defendant, it does not have authority to render default judgment, and any such judgment will be deemed void." *GEICO Marine Ins. Co. v. Moskovitz*, 670 F. Supp. 3d 168, 171 (D.N.J. 2023) (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008)). Consequently, the Court cannot enter a judgment against the Non-Resident Third-Party Defendants.

## 2. THIRD-PARTY DEFENDANT JOHN LEE

The Court finds differently, however, with respect to John Lee who is a citizen and resident of New Jersey. The Court proceeds through a default judgment analysis below.

### a. JURISDICTION AND SUFFICIENCY OF SERVICE

John Lee is properly considered a citizen and resident of New Jersey, and the Court may exercise personal jurisdiction over him. Although North American pleads that John Lee is a citizen and resident of Nevada—and indeed, John Lee provided a copy of a Nevada driver's license with his insurance application (ATPC ¶¶ 8(d), 10, 126)—the facts before the Court suggest that he is actually a citizen and resident of New Jersey. For the relevant time period in this litigation, it appears that John Lee resided in and maintained a domicile in New Jersey, as evidenced by the fact that John Lee listed a New Jersey address on his insurance application. (*Id.* ¶ 125.) This analysis of the facts is further supported by the following: service was effectuated upon John Lee

---

and Joseph Mitlo, as many of these individuals' addresses, contact information, Social Security numbers, and other personal information lead back to Sabrina and Joseph Mitlo. (*See* ATPC ¶¶ 101–147.)) The Court also notes that these jurisdictional issues will not be resolved through further discovery given that discovery in this case is closed, and North American itself has stated that "no further filings are anticipated." (*See* ECF No. 61.)

in New Jersey when a co-resident of suitable age—Sabrina Mitlo's stepdaughter, Noelle Mitlo—confirmed that John Lee "live[d]" at the New Jersey residence listed on his insurance application and Noelle Mitlo accepted service for John Lee at that same address. (ECF No. 52-2 at 2.) John Lee's contacts with New Jersey are thus "continuous and systematic," and he is subject to this Court's jurisdiction. *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ."); *Victory's Dawn, Inc. v. Clemons*, No. 21-9744 2022 WL 3402491 (D.N.J. Aug. 12, 2022) at \*2 (in the default judgment context, noting that the *Victory's Dawn* court had personal jurisdiction over an individual because he "is a resident of New Jersey.").[12]

In addition, the Court has subject matter jurisdiction over this lawsuit given that there is complete diversity between North American, which maintains a principal place of business in Iowa, (ATPC ¶ 1), and John Lee, a resident and citizen of New Jersey.[13] The amount in controversy requirement is also satisfied given that the recission at issue involves a $1,000,000 life insurance policy. (*Id.* ¶ 125.) Thus, the Court possesses subject matter jurisdiction as it relates to John Lee and this matter. *See* 28 U.S.C. § 1332.

Further, service has been shown to be sufficient. Rule 4 governs service, and it states that an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there . . . ." Fed. R. Civ. P. 4(e). John Lee was served with a copy of the ATPC and its exhibits, a cover

---

[12] Even if John Lee were a citizen and resident of Nevada, this would not affect its jurisdiction over John Lee. *See Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at \*3 (D.N.J. July 17, 2013) (in the default judgment context, noting that although it was uncertain whether defaulting defendant had changed his domicile during the course of the lawsuit, where defaulting defendant had previously been a resident of New Jersey, defaulting defendant's contacts with New Jersey were nonetheless sufficient to satisfy "minimum contacts" to confer the *Doe* court with jurisdiction over defaulting defendant).

[13] Again, even if John Lee were a resident and citizen of Nevada, complete diversity, and thus subject matter jurisdiction, would still exist.

letter, and a summons at 310 Lynnwood Street in Piscataway, New Jersey. (ECF No. 52-2 at 2.) The Affidavit of Service for John Lee states the following:

> Noelle Mitlo wouldn't provide any other information other than he lives here closed door on me I did tell her that I could not leave them with her unless they lived there and I did ask her if she lived there, she asked me to hold on closed the door then came back and said she could take them. I am informed that Noelle is the 16 year old step daughter of Sabrina Mitlo and that Noelle lives with Sabrina and Joseph Mitlo at the subject address . . . .

(*Id.* at 2.) Here, a co-resident of the home of suitable age accepted service for John Lee on December 8, 2023. (*See id.*) This is proof of proper service. *See Victory's Dawn, Inc*., 2022 WL 3402491, at *3 (finding service was proper when an affidavit of service showing service upon a co-resident of defendant's home was provided.)

### b. NORTH AMERICAN HAS A LEGITIMATE CAUSE OF ACTION

Prior to entering a default judgment, the Court must determine whether "the moving party's complaint established a legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008) (internal citations omitted). In its ATPC, North American puts forth three causes of action: the IFPA (Count I); common law fraudulent inducement (Count II); and common law civil conspiracy (Count III).[14] It appears that both causes of action under the IFPA and common law fraudulent inducement are subject to the heightened pleading requirements of Rule 9(b).[15] *E.g.*, *State Farm Guar. Ins. Co. v. Tri-Cnty. Chiropractic & Rehab. Ctr., P.C.*, No.

---

[14] North American no longer appears to argue civil conspiracy (Count III); instead, it focuses its remaining arguments on common law fraudulent inducement and fraud more broadly. (First Mot. Def. Judg. Br. at 15 (After arguing its case for its IFPA claims, North American states: "As for North American's other causes of action, the same factual allegations in the Amended Third-Party Complaint establish North American's claims for fraudulent inducement and fraud.")) Accordingly, the Court analyzes only whether Counts I and II present legitimate causes of action.

[15] The Court notes its reservations with the application of Rule 9(b)'s heightened pleading standard to the IFPA, which has broad remedial legislative purposes. *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240 (N.J. 2006) ("[W]e must construe the [IFPA's] provisions liberally to accomplish the Legislature's broad remedial goals." (internal citations omitted).) Indeed, not all courts seem to apply Rule 9(b) to the IFPA. *See Gov't Emps. Ins. Co. v. Zuberi*, No. 15-4895, 2017 WL 4790383, at *4 (D.N.J. Oct. 23, 2017) (in

22-4852, 2023 WL 4362748, at *10 (D.N.J. July 6, 2023) (applying Rule 9(b) to IFPA claims); *Pain & Surgery Ambulatory Surgical Ctr. v. Liberty Mut. Ins. Co.,* No. 15-01, 2007 WL 1814083, at *4 (D.N.J. June 19, 2007) (applying Rule 9(b) to an IFPA cause of action); *Rainforest Distribution Corp. v. Vybes L.A. LLC*, No. 22-00634, 2021 WL 3879099, at *9 (D.N.J. Aug. 31, 2021) (applying Rule 9(b) to a fraudulent inducement cause of action). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The complaint must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). While Rule 9(b)'s requirements may be "relaxe[d]" when the plaintiff "demonstrate[s] that specific information is in the exclusive control of the defendant," the plaintiff must nonetheless "allege facts suggesting fraudulent concealment." *Weske v. Samsung Elecs., Am., Inc.,* 934 F. Supp. 2d 698, 703 (D.N.J. 2013) (internal citations omitted).

The IFPA protects against a broad array of fraudulent activity in the insurance context. *See* N.J. Stat. Ann. § 17:33A-4. Included in the IFPA's provisions is that a party violates the IFPA if they "[p]repare[] or make[] any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining . . . an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract[.]" N.J. Stat. Ann. 17:33A-4(a)(4). To prove fraud under the IFPA, a plaintiff "must essentially prove (1) knowledge, (2) falsity, and (3) materiality. 'Unlike

---

analyzing a Rule 55(b) motion for default judgment, not evaluating IFPA claims under the heightened pleading standards of Rule 9(b)). However, the Court follows the majority rule in this District on this point and applies Rule 9(b)'s heightened pleading standard in the IFPA context.

common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages . . . nor proof of intent to deceive.'" *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program,* No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015). The IFPA's remedial goals are broad since it was enacted to "'confront aggressively the problem of insurance fraud . . . .'" *Merin v. Maglaki*, 599 A.2d 1256, 1259 (N.J. 1992) (quoting N.J. Stat. Ann. § 17:33A-2).

Here, North American has pled a legitimate cause of action under the IFPA because North American has pled that John Lee falsified information on his insurance application and concealed facts related to same. *Gov't Emps. Ins. Co. v. Hamilton Health Care Ctr. P.C.*, No. 17-0674, 2018 WL 1226105, at *4 (D.N.J. Mar. 9, 2018) (in the default judgment context, finding that plaintiffs pled IFPA violations where they pled that defendants submitted falsified claims forms and reports). North American asserts that John Lee violated the IFPA because he asserted fraudulent statements in support of his application for insurance—including but not limited to (1) his identity (which has been associated with a variety of other individuals), (*id*. ¶ 127), and (2) his named beneficiary, Shirley John (who is purportedly Sabrina Mitlo's mother's best friend), (*id.* ¶ 126; *see also supra* n.7). These facts demonstrate knowledge and falsity. Further, these are material representations because North American issued a life insurance policy in the amount of $1,000,000 in reliance upon this information. (ATPC ¶ 125; *see also* Ex. T to ATPC.)

This analysis also comports with Rule 9(b)'s heightened pleading requirements, as North American has put forth "the date, time and place of the alleged fraud" and has injected "precision or some measure of substantiation into a fraud allegation." *Feingold*, 516 F. App'x at 226. Specifically, North American has pled that on March 8, 2019, the John Lee Policy was issued in the amount of $1,000,000. (ATPC ¶ 125). North American further asserts a connection between

the beneficiary and Sabrina and Joseph Mitlo. (ATPC ¶ 126; *see also supra* n.7). North American has provided detailed information about: (1) the amount at issue; (2) the dates in question; and (3) the individuals North American believes to be involved in making these fraudulent statements. *Cf. Pain & Surgery Ambulatory Surgical Ctr.*, 2007 WL 1814083, at *4 (in the motion to dismiss context, dismissing a cause of action under the IFPA and noting that Rule 9(b)'s heightened pleading standard was not met where plaintiff had failed to provide, among other items, the names of relevant patients, dates of service, amounts in dispute, and the individuals who made the alleged fraudulent statements).

What is more, the Court is sensitive to the fact that here, much of the information required to plead fraud is only within John Lee's possession. North American has set forth detailed facts surrounding a complex network of interrelated individuals and insurance policies that appear to be fraudulent and involve sophisticated individuals familiar with the legal system, as well as efforts to evade detection. (*E.g.*, ECF No. 48 (describing North American's attempts to gain compliance with discovery requests from opposing counsel and from Sabina Mitlo, Joseph Mitlo and Dino Marks.)) Because the facts before the Court clearly suggest fraud, and the Court believes that any deficiencies in North American's pleadings with respect to its ability to meet Rule 9(b)'s heightened standard may be attributed to John Lee's attempts to conceal the same, North American has shown a legitimate cause of action. *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (describing the relaxation of Rule 9(b) in the pre-discovery, securities litigation context by stating that "Courts must be sensitive to the fact that application of Rule 9(b) . . . 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" (internal citations omitted)).

As to North American's remaining cause of action, common law fraudulent inducement is established by the following five elements: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Mod. Tech. Grp., Inc*., 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (internal citations omitted). For the reasons stated above, this claim is also satisfied in this context given that North American has shown that John Lee (1) took out an insurance policy under circumstances suggesting a false identity, and (2) named a beneficiary who also appears to be connected to the wider, underlying fraud at issue in this case. Undoubtedly, John Lee intended for his representations to be relied upon since he was seeking an insurance policy. North American relied upon these representations since it issued the John Lee Policy. While this cause of action is also subject to Rule 9(b)'s pleading standard, the Court believes that—like above—the particularity required here is met because North American has adequately pled the particular circumstances of the fraud in this case, and any deficiencies in North American's pleadings are due to the fact that remaining information is within John Lee's control. North American has a legitimate cause of action for fraudulent inducement.

Overall, "defendants are deemed to have admitted the factual allegations of the [c]omplaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe*, 2013 WL 3772532, at *2 (internal citations omitted). The Court accepts these allegations as true and finds that North American has stated legitimate causes of action under the IFPA and for common law fraudulent inducement.

### c.    ENTRY OF DEFAULT IS APPROPRIATE

In determining whether the entry of a default judgment is appropriate, the Court also weighs "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have

24

a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Walker v. Pennsylvania*, 580 F. App'x 75, 78 (3d Cir. 2014) (quotation marks and citation omitted). All three factors weigh in favor of North American.

Beginning with the first factor, "'[w]hen a defendant fails to respond to a plaintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate his or her claims.'" *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016) (quoting *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016)). Here, John Lee has not responded or appeared despite being served. (*See* Fourth Konkel Decl. ¶¶ 9–10; ECF No. 52-2 at 2.) North American is without another means of vindicating this claim; the first factor is satisfied. Similarly, with respect to the second factor—whether a litigable defense exists—because John Lee has not responded, and "because the Court is not aware of a potential defense that would constitute a complete defense to this action[,]" this factor also weighs in favor of North American. *DiPiazza*, 2016 WL 7015625, at *2. As to the third factor, culpable conduct is defined by the Third Circuit as actions "taken willfully or in bad faith." *Chamberlain*, 210 F.3d at 164 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123–24 (3d Cir. 1983)). Again, while John Lee has not responded and the Court is thus unable to assert that his lack of response is in bad faith, John Lee was served with a copy of the ATPC and its exhibits as well as a summons; he is undoubtedly aware of this litigation. (ECF No. 52-2 at 2.) John Lee's non-response is therefore willful. *DiPiazza*, 2016 WL 7015625, at *2. This factor too is satisfied. Therefore, default judgment in favor of North American and against John Lee is appropriate.

### d. DAMAGES

North American does not seek monetary damages. (First Mot. Def. Jud. Br. at 19.) Instead, it seeks a declaration that the policy issued to John Lee is rescinded and *void ab initio*. (*Id.*) The Court may enter default judgment without a hearing unless "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter." Fed.R.Civ.P. 55(b)(2). North American has satisfied its burden with respect to John Lee, and North American is instructed to submit a proposed form of judgment consistent with this Opinion within ten days of this Opinion's entry.

## CONCLUSION

For the reasons set forth above, North American's Motions for Default Judgment, (ECF Nos. 55 and 60), are **GRANTED in part** and **DENIED in part**. Specifically, North American's Motion for Default Judgment is **GRANTED** as to Third-Party Defendant John Lee, and North American is instructed to submit a proposed form of judgment consistent with this Opinion within ten days of the entry of this Opinion. North American's Motions for Default Judgment are **DENIED** as to Third-Party Defendants Dino Marks; Irina Lucki; Richard Mitlo; Valentina Mitlo; John Adams; Cathy Nicholas; and Ricky Costa for the reasons set forth above. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 30, 2024